IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CR-201-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| DASHAWN LEONARD GARRETT, | ) | |
| | ) | |
| Defendant. | ) | |

On February 15, 2022, a grand jury in the Eastern District of North Carolina issued a nine-count superseding indictment against Dashawn Leonard Garrett ("Garrett" or "defendant"). See [D.E. 79]. Later in 2022, Garrett pleaded guilty to three counts, and the Honorable Terrence W. Boyle sentenced Garrett to 240 months' imprisonment. See [D.E. 97, 98, 99, 121, 122, 123, 139]. On February 19, 2025, the United States Court of Appeals for the Fourth Circuit vacated Garrett's guilty plea, conviction, and sentence and remanded for further proceedings. United States v. Garrett, 141 F.4th 96, 114 (4th Cir. 2025). On August 20, 2025, the case was reassigned from the Honorable Terrence W. Boyle to the undersigned. See [D.E. 167]. On September 17, 2025, Garrett moved to suppress evidence obtained from three search warrants [D.E. 173]. On October 16, 2025, the United States responded in opposition [D.E. 185]. On November 7, 2025, the court held an evidentiary hearing. As explained below, the court denies Garrett's motion to suppress.

I.

In January 2021, a confidential source (the "Wilson County Confidential Source") told Detective Brandon Massey ("Detective Massey") of the Wilson County Sheriff's Office that someone nicknamed "Dutch" was trafficking methamphetamine from a house in Princeton, North Carolina. The Wilson County Confidential Source did not know "Dutch's" real name. Princeton,

North Carolina is in Johnston County; therefore, Detective Massey informed his former colleague, DEA Task Force Officer and Johnston County Narcotics Detective Jeramy Creech ("Detective Creech"), of this information. This conversation prompted an investigation that culminated in Garrett's arrest on March 9, 2021. Until Garrett's post-arrest interview on March 9, 2021, however, investigators mistakenly identified Garrett as Gregory Latroy McDuffie ("McDuffie" or "Gregory McDuffie"). See Garrett, 141 F.4th at 100–01.

Between January 2021 and February 3, 2021, the Wilson County Confidential Source told Detective Massey that Dutch used a phone number, (252) 218-1711, and the Wilson County Confidential Source provided directions to a residence in Princeton, North Carolina where the Wilson County Confidential Source could buy the methamphetamine. Investigators confirmed, using map software, that the residence's address was 426 South Pine Street. Investigators attempted to but could not identify any subscriber information or identification concerning the phone number. At this early stage in the investigation, Detective Creech contacted Lieutenant Jack Coats of the Johnston County Sheriff's Office ("Lieutenant Coats") about the investigation.

On February 2, 2021, Lieutenant Coats searched law enforcement databases for 426 South Pine Street and found an offender summary report for "Gregg Latroy McDuffie." The report listed 426 South Pine Street as McDuffie's most recent address. See [D.X. 1] 1, 3. Lieutenant Coats assigned one of his detectives, Detective Maryssa K. Ebersole ("Detective Ebersole"), to the investigation. Detective Ebersole was new to investigating narcotics cases. At this point in the investigation, investigators referred to the suspect as Gregory McDuffie based on the information gleaned from law enforcement databases. Detective Ebersole spoke to Detective Massey.

Detective Massey asked Detective Ebersole to surveil 426 South Pine Street and gather information.

Detective Ebersole drove to 426 South Pine Street and attempted to identify the residents of 426 South Pine Street using license plates and vehicle registration information. Detective Ebersole found no information concerning Garrett or Gregory McDuffie associated with the cars at 426 South Pine Street. Detective Ebersole observed a silver Volvo with a temporary license plate, which precluded Detective Ebersole from identifying the registered owner. Detective Ebersole identified the registered owner of a Pontiac parked on the property as Crystal Hill.

Detective Creech and other law enforcement agents arranged a controlled purchase of methamphetamine from Garrett (mistakenly identified as McDuffie) using the Wilson County Confidential Source. Before the controlled purchase occurred, investigators showed the Wilson County Confidential Source a photo of Gregory McDuffie from a law enforcement database, and the Wilson County Confidential Source mistakenly identified Gregory McDuffie as the person nicknamed Dutch.

On February 3, 2021, the Wilson County Confidential Source called the mobile phone number (252) 218-1711 and arranged the purchase of methamphetamine from Dutch at a nearby McDonald's parking lot. See [D.E. 173] 2; [D.E. 173-1] 2–3; [D.E. 185] 5. Agents monitored the phone call setting up the drug deal and then observed Garrett (misidentified as McDuffie) leave 426 South Pine Street in Princeton, North Carolina, in a silver Volvo and drive to the McDonald's parking lot. See [D.E. 173] 2; [D.E. 173-1] 2; [D.E. 185] 5.[1] Agents also observed the Wilson

---

[1] A man named Gregory McDuffie, aka "Duff," once occupied the residence at 426 South Pine Street in Princeton, North Carolina. See [D.E. 185] 3–4. As mentioned, on February 2, 2021, when Lieutenant Coats searched a law enforcement database, he observed the 426 South Pine Street address associated with McDuffie. See id. at 3. The law enforcement databases did not associate Garrett with the address. See id. at 4.

3

County Confidential Source purchase 34.7 grams of methamphetamine for $860 from Garrett. See [D.E. 173] 2; [D.E. 173-1] 2–3; [D.E. 185] 5. After the controlled purchase, agents recovered the methamphetamine and the audio-visual recording of the drug deal from the Wilson County Confidential Source. Detective Creech showed the Wilson County Confidential Source a photo of Crystal Hill, and the Wilson County Confidential Source identified her as McDuffie's girlfriend.

After this first controlled purchase, DEA Special Agent Lauren Candelaria ("SA Candelaria") became involved in the investigation. SA Candelaria was a member of the DEA High Intensity Drug Trafficking Areas group. SA Candelaria testified that the DEA traditionally lends its manpower and resources to assist local agencies in drug trafficking investigations once the local agencies develop a target.

On February 8, 2021, Detective Ebersole searched a law enforcement database and learned that Gregory McDuffie used 426 South Pine Street in connection with a 2020 charge in Guilford County, North Carolina for marijuana possession. See [D.X. 1] 3. On that day, Detective Ebersole obtained an order from Johnston County Superior Court Judge Thomas Lock authorizing the use of a pen register and trap and trace ("PRTT") device with geolocation data for the (252) 218-1711 phone based on the first controlled purchase. See [D.E. 173-1]. Detective Ebersole's application and affidavit mistakenly identified Garrett as "Gregg McDuffie." Id. at 2–5. Detective Ebersole did not include background information concerning the Wilson County Confidential Source in the affidavit.

On February 9, 2021, Detective Ebersole conducted physical surveillance of 426 South Pine Street. She observed Lieutenant Radford of the Princeton Police Department at 426 South Pine Street for a short time. After Lieutenant Radford left the residence, Detective Ebersole spoke with Lieutenant Radford about why he went to the residence. He stated he was looking for

someone named Henry Weaver in order to serve a warrant on an unrelated matter. Lieutenant Radford told Detective Ebersole that when Rowdy Blake Hill opened the door, Lieutenant Radford smelled an overwhelming odor of marijuana inside 426 South Pine Street. Lieutenant Radford also told Detective Ebersole that he observed Gregory McDuffie inside 426 South Pine Street smoking a vape pen.

On February 16, 2021, the City of Wilson Police Department conducted a second controlled purchase using a different confidential source (the "City of Wilson Confidential Source") from Garrett (misidentified as McDuffie). See [D.E. 173] 2; [D.E. 185] 5–6; [D.E. 185-2] 12–13. Investigators used the City of Wilson Confidential Source because they lost contact with the Wilson County Confidential Source. Detective Massey learned of the City of Wilson Confidential Source from a City of Wilson police detective who used the City of Wilson Confidential Source in another investigation. The City of Wilson Confidential Source placed a monitored telephone call to (252) 218-1711, and Garrett told the City of Wilson Confidential Source that Garrett would send his cousin, Trevor Montae Cole-Evans ("Cole-Evans"), to sell the City of Wilson Confidential Source an ounce of methamphetamine and eight ecstasy pills. See [D.E. 173] 2; [D.E. 185] 5–6; [D.E. 185-2] 12–13. Detective Ebersole watched as Cole-Evans drove a Toyota from 426 South Pine Street to Parker's BBQ in Wilson, North Carolina. See [D.E. 185] 6; [D.E. 185-2] 13–14. The City of Wilson Confidential Source met Cole-Evans there and purchased 28.78 grams of methamphetamine. See [D.E. 185-2] 13. Law enforcement observed the transaction. After the transaction, law enforcement observed Cole-Evans drive to 426 South Pine Street in Princeton, North Carolina. See id. The silver Volvo also was at the residence. See id. After the second controlled purchase, law enforcement recovered the methamphetamine and the audio-visual recording of the drug deal from the City of Wilson Confidential Source.

On February 24, 2021, law enforcement conducted a third controlled purchase from Garrett (misidentified as McDuffie) using the City of Wilson Confidential Source. See id. at 14. Specifically, the City of Wilson Confidential Source placed a monitored phone call to (252) 218-1711 and arranged to purchase 110 grams of methamphetamine for $2,800 from Garrett in the Parker's BBQ parking lot in Wilson, North Carolina. See id.; [D.E. 185] 7. Investigators surveilled Garrett as he drove the silver Volvo from 426 South Pine Street in Princeton, North Carolina, to Parker's BBQ to complete the sale. See [D.E. 185] 7; [D.E. 185-2] 13–14. After the third controlled purchase, law enforcement recovered the methamphetamine and the audio-visual recording of the drug deal from the City of Wilson Confidential Source. Throughout the investigation, however, Detective Ebersole "was not privy" to the audio-visual recordings from the three controlled purchases because those recordings remained in the custody of the Wilson County Sheriff's Office.

On March 1, 2021, Detective Massey obtained a search warrant from Wilson County Superior Court Judge L. Lamont Wiggins to install a tracking device on the silver Volvo. See [D.E. 173] 2; [D.E. 173-2] 4–8. The affidavit recounted the details of the investigation to date but mistakenly identified Garrett as McDuffie aka "Dutch" and stated that "[d]etectives have positively identified McDuffie." [D.E. 173-2] 4.

On March 8, 2021, the City of Wilson Confidential Source repeatedly made monitored calls to (252) 218-1711 and spoke with Garrett about purchasing a large amount of methamphetamine. See [D.E. 185] 8. Garrett agreed to meet the City of Wilson Confidential Source on March 9, 2021, to complete the sale. See id.

On March 8, 2021, investigators held a pre-operational meeting in the Johnston County Sheriff's Office Building at 120 South 3rd Street in Smithfield, North Carolina. SA Candelaria,

Detective Creech, Detective Massey, Detective Ebersole, Johnston County Sheriff's Deputy Will Olive ("Deputy Olive"), and others attended the meeting. Deputy Olive had not been involved in the investigation until this meeting. During the meeting, investigators reviewed the criminal histories of Gregory McDuffie and Cole-Evans. Investigators believed that the pair would travel to Greensboro the next day to purchase methamphetamine from their supplier in order to complete the planned sale in Princeton to the City of Wilson Confidential Source. Investigators also planned to arrest Garrett (still mistakenly identified as McDuffie) on March 9, 2021, while Garrett was in possession of the methamphetamine he planned to sell to the City of Wilson Confidential Source. Investigators planned to arrest Garrett once he returned to Johnston County from Greensboro. See id. Investigators also planned to seek a residential search warrant for 426 South Pine Street, the silver Volvo, and the residents of 426 South Pine Street after the traffic stop.

Detective Ebersole was tasked with drafting the affidavit in support of the request for the search warrant. In preparing the affidavit, Detective Ebersole input the facts of the investigation from the earlier affidavits and planned to update the affidavit with information law enforcement learned on March 9, 2021.

On March 9, 2021, investigators surveilled Cole-Evans and Garrett visually and using geolocation data authorized by the February 8, 2021 warrant for (252) 218-1711 and a February 16, 2021 warrant for (904) 330-8193, which was a phone number associated with Cole-Evans. On March 9, 2021, at 8:34 a.m., investigators conducting visual surveillance at 426 South Pine Street observed a Nissan Maxima and silver Volvo there. At 8:54 a.m., investigators observed the Nissan Maxima depart 426 South Pine Street. At 9:41 a.m., using geolocation data from the PRTT devices on the two phones, investigators observed both phones near the Interstate 40 and Highway 70 split. At 9:57 a.m., investigators observed both phones near the Interstate 40 and Interstate 85 split. At

10:05 a.m., investigators visually confirmed Cole-Evans and Garrett driving in the Nissan Maxima on Interstate 40. Between 10:39 a.m. and 10:43 a.m., investigators conducting visual surveillance observed Cole-Evans and Garrett in the Nissan Maxima exit Interstate 40 at Koury Boulevard in Greensboro, North Carolina and park at a Popeye's restaurant. Investigators observed Cole-Evans and Garrett enter the restaurant. Between 10:50 a.m. and 11:19 a.m., investigators watched Cole-Evans and Garrett meet with the occupants of a white Mercedes-Benz and a silver Chevy Malibu. In surveillance photographs taken in Greensboro, Garrett wore a face mask.[2] After the meeting, Cole-Evans and Garrett returned to the Nissan Maxima and began driving. At 11:24 a.m., Cole-Evans and Garrett stopped briefly at a State Employees' Credit Union at 2600 South Holden Road in Greensboro and returned to Interstate 40 heading east.

Meanwhile, on the morning of March 9, 2021, Detective Ebersole was conducting surveillance at 426 South Pine Street. Detective Ebersole observed the silver Volvo leave 426 South Pine Street and drive to a women's health clinic in Smithfield, North Carolina. Detective Ebersole did not observe the driver. After the Volvo parked at the clinic, Detective Ebersole returned to the Johnston County Sheriff's Office to await information concerning the traffic stop in order to complete the affidavit in support of the search warrant for 426 South Pine Street.

After Cole-Evans and Garrett entered into Johnston County on Highway 70, Deputy Olive observed traffic violations and stopped the Nissan Maxima at 12:56 p.m. Cole-Evans was driving and did not have a driver's license. See [D.E. 173-3] 15. Deputy Olive placed Cole-Evans in his patrol car. See [G.X. 2] 3. Deputy Olive then had Garrett exit the passenger seat. See id. at 3–4. Garrett provided the name Dashawn Garrett to Deputy Olive. Deputy Olive and two other law

---

[2] A surge in COVID-19 cases occurred in January 2021. See COVID-19 Cases and Deaths Dashboard, N.C. Dep't of Health & Hum. Servs., https://covid19.ncdhhs.gov/dashboard/cases-and-deaths (last visited Nov. 12, 2025).

enforcement officers performed a probable cause search of the car based on a marijuana odor. See [D.E. 173-3] 15. The search yielded "a large quantity of suspected methamphetamine." Id. Law enforcement also recovered Garrett's iPhone from the Nissan Maxima. See [G.X. 2] 1. Deputy Olive arrested Cole-Evans and Garrett. See id. The traffic stop ended by 1:34 p.m.

During the traffic stop or shortly after it ended, Deputy Olive spoke briefly with Detective Ebersole. Deputy Olive told Detective Ebersole about the evidence he found inside the Nissan Maxima. Deputy Olive did not tell Detective Ebersole that the passenger of the vehicle provided the name Dashawn Garrett.[3] Deputy Olive also called Detective Creech. Deputy Olive told Detective Creech about the evidence recovered from the traffic stop and that the passenger of the stopped vehicle matched the description of Gregory McDuffie. Deputy Olive also told Detective Creech that the passenger provided the name Dashawn Garrett. Detective Creech asked Deputy Olive if any identification cards in the vehicle or on Garrett or Cole-Evans corroborated that name. Deputy Olive responded that there was not. Based on the investigation to that point and his knowledge that suspects frequently provide false names upon arrest, Detective Creech decided that the name of the passenger would remain Gregory McDuffie until fingerprints or tattoo identification proved otherwise. Detective Creech instructed Deputy Olive to label Garrett as John Doe until investigators could confirm his identity. At the time of this conversation between Deputy Olive and Detective Creech, Detective Creech was not with Detective Ebersole. Detective Creech

---

[3] A DEA report of investigation, dated October 16, 2025, details an interview of Deputy Olive conducted on October 15, 2025. The report states that Deputy Olive could not recall if he spoke with Detective Ebersole before the issuance of the 426 South Pine Street search warrant. See [G.X. 3] 2–3. According to the October 16, 2025 DEA report of investigation, Deputy Olive only recalls speaking with Detective Creech on March 9, 2021. See id. at 3. The court credits Detective Ebersole's testimony over Deputy Olive's recollection summarized in the report of investigation. Deputy Olive prepared a report on March 9, 2021. See [G.X. 2]. In the report, Deputy Olive does not state that he spoke with either Detective Creech or Detective Ebersole during the traffic stop. See id.

9

did, however, speak with Detective Ebersole or Lieutenant Coats to inform them that drugs were found during the traffic stop and that investigators detained and arrested the vehicle's two occupants. Detective Creech did not mention to Lieutenant Coats or Detective Ebersole that the passenger provided Deputy Olive the name Dashawn Garrett.

After the traffic stop concluded at 1:34 p.m., Johnston County Sheriff's Office vehicles transported Garrett and Cole-Evans to the Johnston County Sheriff's Office in Smithfield, North Carolina for processing. At 1:48 p.m., the vehicles arrived at the Johnston County Sheriff's Office with Garrett and Cole-Evans.

At 12:56 p.m., Detective Ebersole was at the Johnson County Sheriff's Office in Smithfield and prepared to submit a search warrant application to Judge Lock for 426 South Pine Street, the silver Volvo, and the residents of 426 South Pine Street. Detective Ebersole added the information she orally received from Deputy Olive to the search warrant affidavit. Detective Ebersole assumed that the passenger in the car was Gregory McDuffie. In the affidavit, Detective Ebersole mistakenly wrote that Deputy Olive "identified the passenger as Greggory McDuffie." [D.E. 185-2] 15. When completing the affidavit, Detective Ebersole did not know that the passenger in the vehicle provided Deputy Olive with the name Dashawn Garrett. Detective Ebersole completed the affidavit no later than 1:34 p.m.

After Detective Ebersole completed the affidavit, Detective Ebersole walked to Johnston County Courthouse in Smithfield, located on the other side of the building containing the Johnston County Sheriff's Office, and applied to Judge Lock for the search warrant for 426 South Pine Street. At 1:48 p.m., Detective Ebersole spoke to Judge Lock concerning the residential search warrant and submitted the residential search warrant application and affidavit for 426 South Pine Street.

10

On March 9, 2021, at 2:01 p.m., Judge Lock issued the search warrant in Detective Ebersole's presence. See [D.E. 185-2]; [D.E. 173-3]. Before Judge Lock signed the warrant, nobody told Detective Ebersole that the arrestee she thought was Gregory McDuffie provided the name Dashawn Garrett to Deputy Olive. Detective Ebersole also was unaware that Detective Creech spoke with Deputy Olive during the traffic stop.

On March 9, 2021, at 2:46 p.m., Detective Ebersole, Lieutenant Coats, ATF Task Force Officer Justin Roberts, and Johnston County Narcotics Detective Scott Richardson executed the search warrant at 426 South Pine Street. See [D.E. 173-4] 5. During the search, Detective Ebersole took photographs, took notes of evidence, processed the evidence, and assisted with the search. Agents found three cell phones inside 426 South Pine Street. Inside 426 South Pine Street, agents also located a bedroom containing documentation and photographs of Dashawn Garrett and Crystal Hill. See id. Detective Ebersole thought it unusual that the search turned up documentation and photographs of Dashawn Garrett when she believed the target of the investigation was named Gregory McDuffie.

Agents also located the following in the bedroom closet: "a green backpack housing two clear plastic bags containing approximately 404 grams of suspected marijuana, [two] Glock magazines, [one] case of 45Auto PMC Bronzo Ammunition, black in color Glock 21/ 45 Auto/ SN: AFBX841, extended 45 Auto magazine containing 19/23 rounds, 45 Auto magazine containing 11/13 rounds (1/45auto chamber), Jennings Nine/ 9mm SN: 1305635/ SA Handgun, 9mm magazine containing 11/9mm rounds (1/9mm chamber), High Point Model: 1095/ 10mm/ SN: M03231, 10mm magazine containing [ten] rounds (1/10mm chamber, Glock 21/ Gen4 Box/ SN: AFBX841, [and] 2.5 dosage units of suspected Xanax inside a clear plastic container." Id.

11

As agents executed the search warrant, Detective Massey, SA Candelaria, and Detective Creech traveled to the Johnston County Sheriff's Office to process evidence and suspects. See [D.E. 185] 11. While Detective Ebersole was at 426 South Pine Street, she called Detective Creech about a locked safe at the residence and asked if he could try to get the code to unlock the safe. Detective Ebersole also informed Detective Creech of the documentation and photographs of Dashawn Garrett inside the residence.

Detective Creech told Detective Ebersole that agents were trying to identify the man they originally believed to be Gregory McDuffie. Detective Creech did not tell Ebersole the safe's code on the phone call. After the phone call ended and in the Johnston County Sheriff's Office, Detective Massey spoke to Garrett to inquire about the code to the safe and called him "Mr. McDuffie." According to Detective Massey, Garrett "looked at [Detective Massey] like [Detective Massey] was crazy" and told Detective Massey that his name was Dashawn Garrett. Detective Massey informed Detective Creech and SA Candelaria of this interaction.

Agents ultimately recovered the following in a safe located in the bedroom: "[three] clear plastic baggies containing off white crystal substance suspected to be methamphetamine, seven strips of Suboxone, [one] pink clear plastic baggie containing suspected methamphetamine, [a] Blazer Box of 10mm aluminum ammunition, multiple clear plastic baggies (pink zip-lock type and sandwich bags)," and two dollars. [D.E. 173-4] 6. Agents also located in the bedroom "three digital scales in/on the dresser (the scale located on top of the dresser contained off-white crystal residue)," and two "large bongs containing dark burnt residue." Id.

Agents searched the living room. They recovered "a glass bowl containing burnt residue" and "a clear plastic tied off baggie containing suspected methamphetamine." Id. Agents recovered

a glass bowl containing burnt residue in the bathroom. Id. In the house and a vacant vehicle on the property, agents found pieces of mail addressed to Gregory McDuffie at 426 South Pine Street.

On March 9, 2021, North Carolina Bureau of Investigation Special Agent Jessica Cadwallader responded to the Johnston County Sheriff's Office with narcotics detection equipment to provide a preliminary identification of the off-white crystal substance located during the traffic stop of Garrett and Cole-Evans. See id. Detective Creech weighed the 293 grams of suspected methamphetamine from the traffic stop. See id. Detective Creech sent the suspected methamphetamine from the traffic stop and the search of 426 South Pine Street to the DEA laboratory for analysis. See id.

Before 3:50 p.m. but after Cole-Evans and Garrett arrived at the Johnston County Sheriff's Office, Detective Creech asked the two men for their full names, dates of birth, and any addresses. Garrett responded that his name was Dashawn Garrett. Detective Creech asked a secretary to print a criminal history report for Dashawn Garrett from the NCIC database. Detective Creech and SA Candelaria prepared to interview Garrett. Before the interview formally began but while in the interview room with Garrett, Detective Creech and SA Candelaria positively identified Garrett by corroborating his tattoos and scars with those listed on a criminal history report for Dashawn Garrett. Garrett was the same man from whom law enforcement had conducted three controlled buys and who lived at 426 South Pine Street. See [D.E. 185] 11.

At 4:10 p.m., Detective Creech and SA Candelaria began to interview Garrett. Garrett waived his Miranda rights. During the interview, agents identified the iPhone recovered from the traffic stop and which was used to track the target's location as Garrett's iPhone.

The search of 426 South Pine Street ended at 4:03 p.m. After completing the search, Detective Ebersole, Detective Barbour, and Detective Wilson returned to the Johnston County

Sheriff's Office. Those agents then transported Garrett, Cole-Evans, Crystal Hill and Rowdy Blake Hill to the Johnston County Magistrate's Office to charge them with various offenses. See [D.E. 173-4] 6. While at the Johnston County Magistrate's Office, Garrett asked Detective Ebersole "why his girlfriend Crystal Hill was being charged with the illegal contraband located in their bedroom if he claimed ownership of all the items seized." [D.E. 173-4] 6; see [D.E. 185] 12.

On March 9, 2021, Garrett remained in custody at the Johnston County Jail under $1,180,000.00 secured bond. See [D.E. 173-4] 6. On that date, law enforcement charged Garrett in state court with conspiracy to traffic methamphetamine; trafficking methamphetamine by possession, transportation, or manufacture; possession of a firearm by felon (three counts); possession with intent to sell or deliver methamphetamine; possession with intent to sell or deliver marijuana; possession with intent to sell or deliver a schedule IV substance; possession with intent to sell or deliver a Schedule III substance; and simple possession of a schedule VI substance. Id. at 6–7.

On March 23, 2021, Detective Ebersole obtained a search warrant from Judge Lock for Garrett's iPhone. See [D.E. 173-4]. In the search warrant affidavit, Detective Ebersole properly identified Garrett but did not otherwise explain the earlier misidentification of Garrett as McDuffie during the investigation. Id. The search warrant affidavit described the March 9, 2021 traffic stop, the evidence seized during the traffic stop, and the evidence seized while executing the search warrant for 426 South Pine Street. See id. at 6–7. The affidavit detailed that law enforcement recovered "photos and documentation of" Garrett in a bedroom in the house along with drugs, drug paraphernalia, firearms, and ammunition. See id. The affidavit also described Garrett's iPhone but did not state whether agents recovered the phone at the traffic stop (which they did) or at 426 South Pine Street. See id. at 6.

On May 4, 2021, a federal grand jury in the Eastern District of North Carolina charged Garrett with eight various drug and firearm offenses. See [D.E. 1]. On December 21, 2021, Garrett moved to suppress evidence and for a Franks hearing. See [D.E. 64].

On February 15, 2022, the grand jury returned a superseding indictment and charged Garrett with conspiracy to distribute and possess with the intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 246 (count one); two counts of possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924 (counts two and nine); distribution of a quantity of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (count three); distribution of five grams or more of methamphetamine and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (count four); distribution of 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (count five); possession with intent to distribute fifty grams or more of methamphetamine and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (count six); possession with intent to distribute a quantity of a mixture and substance containing a detectable amount of methamphetamine and a quantity of marijuana in violation of 21 U.S.C. § 841(a)(1) (count seven); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (count eight). See [D.E. 79]. On March 15, 2022, Garrett moved to withdraw his motion to suppress and for a Franks hearing. See [D.E. 90]. On March 16, 2022, the court granted Garrett's motion. See [D.E. 92].

On March 16, 2022, with a written plea agreement, see [D.E. 98, 99], Garrett pleaded guilty to counts one, two, and five of the superseding indictment. See [D.E. 97]. On July 11, 2022, Judge Boyle sentenced Garrett to 240 months' imprisonment. See [D.E. 121, 122, 123, 139]. On July 19, 2022, Garrett appealed. See [D.E. 125].

On February 19, 2025, the Fourth Circuit vacated Garrett's guilty plea, conviction and sentence and remanded the case to this court "for further proceedings." Garrett, 141 F.4th at 114; see [D.E. 153, 154]. On June 23, 2025, the mandate issued. See [D.E. 160]. On August 20, 2025, the case was reassigned to the undersigned. See [D.E. 167].

II.

Garrett moves to suppress all evidence seized pursuant to the PRTT, residential, and iPhone search warrants. See [D.E. 173] 8. "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in objective good faith." Messerschmidt v. Millender, 565 U.S 535, 546 (2012) (quotation omitted); see United States v. Leon, 468 U.S. 897, 922–23 (1984). A reviewing court must give a judicial officer's probable cause determination "great deference." United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990); see United States v. Darosa, 102 F.4th 228, 233– 34 (4th Cir. 2024), cert. denied, 145 S. Ct. 342 (2024). "Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." District of Columbia v. Wesby, 583 U.S. 48, 57 (2018) (cleaned up); see Maryland v. Pringle, 540 U.S. 366, 371 (2003); Illinois v. Gates, 462 U.S. 213, 241–46 (1983); United States v. Dickey-Bey, 393 F.3d 449, 454 (4th Cir. 2004). Probable cause exists "when, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Zelaya-Veliz, 94 F.4th 321, 334 (4th Cir. 2024) (cleaned up); see Ornelas v. United States, 517 U.S. 690, 696 (1996); Gates, 462 U.S. at 238; United States v. Briscoe, 101 F.4th 282, 294 (4th Cir. 2024); United States v. Blakeney, 949 F.3d 851, 859 (4th Cir. 2020). "Probable cause is

16

not a high bar." <u>Wesby</u>, 583 U.S. at 57; <u>see</u> <u>Moretti v. Thorsdottir</u>, ___ F.4th ___, 2025 WL 2921438,

at *8 (4th Cir. 2025) ("The probable cause bar is a low one . . . .").

"[E]ven if a search warrant later is determined to lack probable cause, the evidence

obtained will not be suppressed if the executing officer relied on the warrant in objectively

reasonable good faith." <u>Blakeney</u>, 949 F.3d at 859; <u>see</u> <u>Leon</u>, 468 U.S. at 920–23; <u>Darosa</u>, 102

F.4th at 234–35. The good faith exception does not apply

> (1) where a magistrate issues a warrant based on a deliberately or recklessly false
> affidavit; (2) where a magistrate lacks neutrality and detachment; (3) where a
> warrant is based on an affidavit so lacking in indicia of probable cause as to render
> official belief in its existence entirely unreasonable; (4) where a warrant is so
> facially deficient that a reasonable officer could not believe it was valid; and (5)
> where police recklessly maintain or knowingly enter false information into a
> warrant database to enable a future arrest.

<u>United States v. Ray</u>, 141 F.4th 129, 134–35 (4th Cir. 2025); <u>see</u> <u>Leon</u>, 468 U.S. at 922–23; <u>United</u>

<u>States v. Seerden</u>, 916 F.3d 360, 366–67 (4th Cir. 2019).

### A.

Garrett asks the court to invalidate the February 8, 2021 warrant authorizing the PRTT

device. Garrett argues that the warrant "lack[ed] sufficient facts to establish probable cause"

because the warrant application and affidavit did not state the basis for the reliability or credibility

of the Wilson County Confidential Source and did not detail law enforcement attempts to confirm

McDuffie's identity. [D.E. 173] 4.

Probable cause supported the February 8, 2021 warrant authorizing the PRTT device. The

warrant incorporated Detective Ebersole's affidavit. <u>See</u> [D.E. 185-1] 8. The affidavit supporting

the warrant states that, four minutes after the Wilson County Confidential Source met with police,

the Wilson County Confidential Source placed a recorded phone call on February 3, 2021, to the

(252) 218-1711 number and arranged to purchase methamphetamine from the person on the other

end of the call who law enforcement believed was named McDuffie. [D.E. 173-1] 3. Agents

17

monitored the call in real-time. On the call, the Wilson County Confidential Source and the person on the other end of the line (mistakenly identified in the affidavit as McDuffie but really Garrett) agreed to meet in a McDonald's parking lot in Princeton. <u>See id.</u> Less than an hour later, the Wilson County Confidential Source met "McDuffie" at the McDonald's parking lot, purchased methamphetamine, and gave it to law enforcement. <u>See id.</u> at 3–4. Agents observed the controlled buy. <u>See id.</u> From this evidence, probable cause existed to conclude that evidence of the crime of drug-trafficking would be found concerning the (252) 218-1711 number via the PRTT device. <u>See</u> <u>Ornelas</u>, 517 U.S. at 696; <u>Gates</u>, 462 U.S. at 238; <u>Moretti</u>, 2025 WL 2921438, at *8; <u>Briscoe</u>, 101 F.4th at 294; <u>Zelaya-Veliz</u>, 94 F.4th at 334; <u>Blakeney</u>, 949 F.3d at 859. Regardless of the phone user's identity, probable cause existed for the phone because the warrant described a drug purchase coordinated through the phone for which law enforcement sought the PRTT device. Moreover, the affidavit's failure to state the basis for the Wilson County Confidential Source's credibility and reliability does not alter this finding. After all, the Wilson County Confidential Source did not provide the information that provided the basis for probable cause. Rather, the agents derived probable cause from the controlled purchase they observed on February 3, 2021, which they set up with a recorded and monitored phone call to (252) 218-1711. <u>See, e.g.</u>, <u>United States v. Aviles</u>, 938 F.3d 503, 509 (3d Cir. 2019). Thus, the court finds that probable cause supported the warrant authorizing the PRTT device.

Alternatively, even if the court agreed with Garrett that the warrant lacked probable cause, the good-faith exception applies. The warrant was not "so lacking in indicia of probable cause as to render the officers' belief in its existence entirely unreasonable." <u>DaRosa</u>, 102 F.4th at 234–35 (cleaned up); <u>see</u> <u>Leon</u>, 468 U.S. at 923. Moreover, when Detective Ebersole sought and obtained the warrant from Judge Lock authorizing the PRTT device, she did not know that Garrett was

18

mistakenly misidentified as McDuffie and that mistake does not undermine the probable cause for the PRTT device. As mentioned, the probable cause derived from agents' knowledge that the dealer used the phone with the number (252) 218-1711 as part of the controlled purchase that agents observed.

The court has assessed the credibility of Detective Ebersole at the hearing and finds her credible. When Detective Ebersole applied for the PRTT device, she did not know of the misidentification. The statement in the affidavit misidentifying Garrett as McDuffie was a mistake, not a "deliberately or recklessly false" statement that negates the good-faith exception. Ray, 141 F.4th at 134–35; see Leon, 468 U.S. at 922–23; Seerden, 916 F.3d at 366–67. Accordingly, even if the court determined that the warrant authorizing the PRTT device lacked probable cause, the court would not suppress the evidence recovered in reliance on the warrant. Thus, the court denies Garrett's motion to suppress evidence obtained from the PRTT device.[4]

## B.

Garrett asks the court to invalidate the residential search warrant of March 9, 2021, for 426 South Pine Street, and the search warrant of March 23, 2021, authorizing the search of Garrett's iPhone, under Franks v. Delaware, 438 U.S. 154 (1978). "A defendant is entitled to attack an otherwise facially valid search warrant affidavit under the narrow exception created in Franks v. Delaware." United States v. Sanders, 107 F.4th 234, 252 (4th Cir. 2024) (cleaned up). To invalidate a warrant after a Franks hearing, a defendant must demonstrate by a preponderance of

---

[4] During the evidentiary hearing, counsel for the government suggested that Garrett raised a Franks challenge to the February 8, 2021 warrant authorizing the use of the PRTT device. Garrett's motion does not, however, reference Franks or cite the governing standard in its argument concerning this warrant. See [D.E. 173] 4. Accordingly, the court assesses only the challenge Garrett raised. In any event, a Franks challenge to the February 8, 2021 warrant would fail for the same reason the good faith exception applies.

19

the evidence "(1) that [the officer] made false or misleading statements in the [warrant] affidavit; (2) that the statements were made deliberately or with reckless disregard for the truth; and (3) that the statements were material to a demonstration of probable cause such that, when they are set aside, the remaining content was insufficient to establish probable cause." Jackson v. Carin, 128 F.4th 525, 534 (4th Cir. 2025); see Franks, 438 U.S. at 155–56, 171–72; United States v. Pulley, 987 F.3d 370, 376–77 (4th Cir. 2021); United States v. Moody, 931 F.3d 366, 370–71 (4th Cir. 2019); United States v. White, 850 F.3d 667, 672–73 (4th Cir. 2019); United States v. Lull, 824 F.3d 109, 114–20 (4th Cir. 2016); Miller v. Prince George's Cnty., 475 F.3d 621, 627–28 (4th Cir. 2007), abrogated on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009); United States v. Colkley, 899 F.2d 297, 300–01 (4th Cir. 1990).

Where the defendant's challenge concerns an omission of information from a warrant application, the defendant must demonstrate by a preponderance of the evidence that (1) the affiant omitted the information with intent to mislead or with reckless disregard that the omitted material would mislead the judicial officer, and (2) the omitted information was material to the probable cause determination. See Pulley, 987 F.3d at 376–77; United States v. Haas, 986 F.3d 467, 474–77 (4th Cir. 2021); United States v. Wharton, 840 F.3d 163, 168–70 (4th Cir. 2016); Lull, 824 F.3d at 114–20; United States v. Tate, 524 F.3d 449, 454–55 (4th Cir. 2008). "The omission must be designed to mislead or must be made in reckless disregard of whether it would mislead." Tate, 524 F.3d at 455 (cleaned up). "A showing that the officer acted negligently, or that the omission was merely an innocent mistake, is insufficient to warrant suppression." Lull, 824 F.3d at 115; see Pulley, 987 F.3d at 377 ("What the officer-affiant should have known does not matter if [she] did not in fact know."). "[R]eckless disregard in the Franks context requires a showing that the affiant

personally recognized the risk of making the affidavit misleading." Pulley, 987 F.3d at 377; see, e.g., Moretti, 2025 WL 2921438, at *7–8.

In assessing warrants and affidavits in support of warrants, the Supreme Court and the Fourth Circuit have emphasized that "warrant affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation" and "must be interpreted in a commonsense manner, neither held to the standard of what judges or lawyers feel they would have written if given the opportunity nor judged as an entry in an essay contest." Moody, 931 F.3d at 372 (quotations omitted); see United States v. Harris, 403 U.S. 573, 579 (1971); United States v. Ventresca, 380 U.S. 102, 108 (1965); Moretti, 2025 WL 2921438, at *6; United States v. Clenney, 631 F.3d 658, 665 (4th Cir. 2011). "A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." Ventresca, 380 U.S. at 108.

1.

Garrett attacks the residential search warrant of March 9, 2021. Garrett argues that the court should invalidate the warrant because Detective Ebersole's affidavit did not state that "law enforcement arrested Dashawn Garrett . . . under the mistaken belief that he was Gregory McDuffie" and did not provide information explaining the misidentification of Garrett as McDuffie to Judge Lock. See [D.E. 173] 4–6. Garrett also mentions the failure in the affidavit to state that law enforcement used two different confidential sources for the controlled buys and Detective Ebersole's statement that Deputy Olive identified McDuffie during the traffic stop. See

21

id. at 5. Garrett argues that "[w]ithout the falsehoods and material omissions of facts, the [a]ffidavit failed to establish probable cause to support the warrant." Id. at 5.

The court has made credibility determinations after observing the witnesses testify at the hearing, including Detective Ebersole. Detective Ebersole testified credibly at the hearing. Detective Ebersole did not omit the information about Garrett's identity with intent to mislead or with reckless disregard that the omission would mislead Judge Lock. Detective Ebersole testified credibly that she did not learn of Garrett's identity until after she submitted the warrant application to Judge Lock and after Judge Lock signed the warrant. Detective Ebersole's absence of knowledge about Garrett's identity when she signed the affidavit and submitted it to Judge Lock does not show the requisite scienter. See Pulley, 987 F.3d at 377 ("[D]efendants must offer proof by a preponderance of intentional or reckless falsehood to prevail."); Nerio v. Evans, 974 F.3d 571, 577 (5th Cir. 2020) (denying a claim based on Franks where "everything in the record suggest[ed] that" the officer's misidentification "was an honest mistake" (quotations omitted)); Moody, 931 F.3d at 371 ("An innocent or even negligent mistake by the officer will not suffice."); cf. Garrett, 141 F.4th at 106 ("[W]e make no explicit findings as to the wrongdoing or ill motive of any particular officer."). Because Detective Ebersole did not know of the misidentification of Garrett as McDuffie when she applied for the search warrant on March 9, 2021, she lacked the mental state required by Franks and its Fourth Circuit progeny to invalidate the warrant. See Franks, 438 U.S. at 155–56, 171–72; Pulley, 987 F.3d at 377; Haas, 986 F.3d at 474–77; Moody, 931 F.3d at 371; Wharton, 840 F.3d at 169–71; Lull, 824 F.3d at 114–20; Tate, 524 F.3d at 454–455.

Likewise, although Detective Ebersole could have done a better job distinguishing between the Wilson County Confidential Source used in the first controlled buy and the City of Wilson Confidential Source used in the second and third controlled buys, the ambiguity was a good-faith

22

mistake in an affidavit drafted by a new narcotics detective "in the midst and haste of a criminal investigation." Moody, 931 F.3d at 372 (quotation omitted). Detective Ebersole testified credibly that she "was not aware" that she should have included the background information concerning the confidential sources in the affidavit. Moreover, Detective Ebersole's honest mistake differs from the omission in Lull, which the Fourth Circuit held was made intentionally or with reckless disregard that the omission made the affidavit misleading. In Lull, a veteran investigator wrote the affidavit which omitted information about a confidential informant's theft of funds to be used in a controlled purchase. See 824 F.3d at 112, 116. Furthermore, in Lull, unlike in this case, the confidential informant provided the only information in the affidavit connecting the defendant to the location of the controlled purchase. See id. at 112–13. The Fourth Circuit reasoned in Lull that, "[a]s an experienced investigator, [the investigator] would surely know that reliability is key to a magistrate's probable cause analysis when the search warrant application contains information provided by an informant." Id. at 116 (cleaned up). In Lull, the Fourth Circuit concluded that the investigator omitted the information "at least recklessly." Id. at 117.

        In contrast to Lull, the investigation into Garrett's drug trafficking was Detective Ebersole's "first big investigation" as a member of the narcotics division. Moreover, Ebersole and other investigators conducted extensive surveillance of 426 South Pine Street, and investigators watched and listened as each controlled purchase took place in public. The Fourth Circuit explained in Lull that the "the significance—or insignificance—of a particular omission to the determination of probable cause may inform" the scienter determination. Id. at 117. Here, Judge Lock's probable cause determination did not rise or fall with the information concerning the confidential sources. See, e.g., Aviles, 938 F.3d at 509. The confidential sources' credibility and reliability did not need to be verified, because officers set up the controlled purchases on monitored calls, observed the

controlled purchases as they occurred, and then recovered the contraband and audio-visual recordings. See id. The court finds that Detective Ebersole did not intentionally or recklessly omit the challenged information.

Alternatively, the omitted information's inclusion in the search warrant affidavit of March 9, 2021, would not defeat probable cause to search 426 South Pine Street. The affidavit details the extensive drug-trafficking that occurred from 426 South Pine Street, which Detective Ebersole and members of the Wilson County Sheriff's Office, the DEA, and other law enforcement agencies observed during the three controlled purchases. See [D.E. 185-2] 9–14. Even with the omitted information about the mistaken identification of Garrett as McDuffie and ambiguous statements concerning the confidential sources included in the affidavit, a "fair probability" remained that violations of the North Carolina Controlled Substances Act would be found at 426 South Pine Street. See Ornelas, 517 U.S. at 696; Gates, 462 U.S. at 238; Moretti, 2025 WL 2921438, at *8; Briscoe, 101 F.4th at 294; Zelaya-Veliz, 94 F.4th at 334; Blakeney, 949 F.3d at 859; cf. Pulley, 987 F.3d at 378–79 (explaining that the requirement that "affiants must provide indicia of reliability and credibility" to bolster an informant's information does not apply when "the information provided . . . was independently corroborated"). At bottom, regardless of the misidentification of Garrett as McDuffie and the ambiguous statements in the affidavit concerning the two confidential sources, officers witnessed three controlled purchases which stemmed from 426 South Pine Street. Moreover, the warrant affidavit details law enforcement's observation of these purchases and their connection to 426 South Pine Street. The affidavit also details the drugs recovered during the traffic stop on March 9, 2021, and the relationship between those two individuals in the car and 426 South Pine Street. This information in the affidavit established probable cause to support the

24

search warrant of 426 South Pine Street. Accordingly, Garrett fails to show by a preponderance of the evidence that the court should invalidate the warrant under Franks.

To the extent Garrett relies on the erroneous statement from Detective Ebersole in the search warrant affidavit that, during the March 9, 2021 traffic stop, Deputy Olive "identified the passenger as Greggory McDuffie," the argument fails. [D.E. 185-2] 15; see [D.E. 173] 4–5. Detective Ebersole's statement in the search warrant affidavit that Deputy Olive identified the passenger as Gregory McDuffie is incorrect. Detective Ebersole credibly testified that Deputy Olive did not tell her that Garrett provided the name "Dashawn Garrett" during the traffic stop and that she assumed that he had identified Garrett as Gregory McDuffie during the traffic stop. The court credits Detective Ebersole's testimony that she included the statement in the warrant based on an assumption she made about the identification. Reliance on Detective Ebersole's mistaken assumption does not show scienter. See Franks, 438 U.S. at 165 (explaining that a "truthful" showing does not mean "'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily"); Colkley, 899 F.2d at 303 ("Franks . . . recognizes that the information an affiant reports from an informant may not ultimately be accurate, and is willing to tolerate such a result so long as the affiant did not deliberately mislead the magistrate."). Accordingly, the court rejects Garrett's argument concerning Detective Ebersole's statement about the traffic stop identification.

Garrett also has not made the required showing of materiality. As explained, the misidentification of Garrett as McDuffie does not negate probable cause to search 426 South Pine Street because, without the statement, the affidavit contained ample evidence to support probable

25

cause that agents would find evidence of violations of the North Carolina Controlled Substances Act at 426 South Pine Street. See Wesby, 583 U.S. at 57; Franks, 438 U.S. at 155–56, 171–72; Jackson, 128 F.4th at 534; Moody, 931 F.3d at 370–71; White, 850 F.3d at 672–73. Accordingly, the court declines to invalidate the warrant based on the incorrect statement contained in Detective Ebersole's affidavit about Deputy Olive allegedly identifying McDuffie.

Detective Ebersole did not make false or misleading statements in the warrant affidavit deliberately or with reckless disregard for the truth. Detective Ebersole did not omit information from the warrant affidavit intentionally or with reckless disregard that the omission would mislead Judge Lock. In short, Detective Ebersole lacked the mental state required to satisfy Franks's scienter requirement. Moreover, the affidavit contained the following information within Detective Ebersole's knowledge at the time of submission and unaffected by the challenged incorrect statements and omissions: (1) officers watched and listened as two different confidential sources ordered and purchased methamphetamine three times from a man investigators believed to be Gregory McDuffie; (2) the man believed to be Gregory McDuffie left 426 South Pine Street before two of the controlled purchases, met the confidential sources and made the sales, and returned to 426 South Pine Street after the controlled purchases occurred; (3) during the other controlled purchase, the City of Wilson Confidential Source ordered the drugs from "McDuffie" but Cole-Evans delivered the drugs for the controlled purchase as "McDuffie" said he would, and Cole-Evans also left from 426 South Pine Street to complete the sale; (4) a Princeton police officer saw the man investigators believed to be McDuffie inside of 426 South Pine Street on February 9, 2021; and (5) a traffic stop was completed on March 9, 2021, as part of the investigation, and agents recovered a large quantity of suspected methamphetamine from two individuals involved in drug dealing from 426 South Pine Street. This information provided probable cause to issue a

search warrant for 426 South Pine Street. Accordingly, Garrett fails to show materiality by a preponderance of the evidence. See Jackson, 128 F.4th at 537–38; Aviles, 938 F.3d at 509; Moody, 931 F.3d at 372; Wharton, 840 F.3d at 170; Colkley, 899 F.2d at 301. Thus, the court denies Garrett's motion to suppress the search warrant for 426 South Pine Street.

2.

As for the iPhone search warrant, Garrett argues that Detective Ebersole omitted information concerning Garrett's misidentification in the prior search warrants and omitted any information concerning how investigators found the iPhone. See [D.E. 173] 6. The court credits Detective Ebersole's testimony concerning how she prepared the affidavit in support of the iPhone search warrant. Detective Ebersole did not make false or misleading statements in the warrant affidavit deliberately or with reckless disregard for the truth. See Franks, 438 U.S. at 155–56, 171–72; Pulley, 987 F.3d at 377; Haas, 986 F.3d at 474–77; Moody, 931 F.3d at 371; Wharton, 840 F.3d at 169–71; Lull, 824 F.3d at 114–20; Tate, 524 F.3d at 454–455.

At the hearing, Detective Ebersole credibly testified that she did not include information concerning the misidentification because she did not believe the information was "pertinent." The court credits her testimony. Detective Ebersole's did not intentionally mislead Judge Lock or act in reckless disregard of a likelihood that her failure to include the information about the misidentification would mislead Judge Lock. See Haas, 986 F.3d at 477; Pulley, 987 F.3d at 377 ("[D]efendants must offer proof by a preponderance of intentional or reckless falsehood to prevail."); Moody, 931 F.3d at 371 ("An innocent or even negligent mistake by the officer will not suffice."). Likewise, whether law enforcement recovered the iPhone at the traffic stop from Garrett (which it did) or at 426 South Pine Street was not relevant to find probable cause to search it. The key fact was that it was Garrett's iPhone, and he had recently engaged in numerous controlled

purchases and was arrested in a car with a large amount of methamphetamine and lived at a residence with illegal drugs and firearms.

Garrett also fails to show materiality. Even if the affidavit detailed law enforcement's and the confidential sources' misidentification of Garrett as McDuffie during the investigation and in prior warrants, the affidavit describes: (1) the traffic stop of Garrett and Cole-Evans on March 9, 2021; (2) the drugs seized during the traffic stop on March 9, 2021; (3) the connection between Garrett and Cole-Evans and 426 South Pine Street; (4) the evidence seized from Garrett's bedroom at 426 South Pine Street on March 9, 2021; and (5) the seized iPhone as Garrett's. See [D.E. 173-4] 5–6. The affidavit also describes Detective Ebersole's training that cell phones frequently contain evidence of criminal activity. See id. at 7–8. Moreover, the affidavit correctly states that SA Candelaria identified the iPhone as Garrett's. Cf. Ventresca, 380 U.S. at 111 ("Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number."); Jackson, 128 F.4th at 536; United States v. Hodge, 354 F.3d 305, 311 n.1 (4th Cir. 2004). This information provided ample basis for Judge Lock's probable cause determination to search the iPhone regardless of the omitted information about the earlier misidentification of Garrett as McDuffie or where law enforcement recovered the iPhone (i.e., either in the car during the March 9, 2021 traffic stop or at 426 South Pine Street during the search). Cf. Pulley, 987 F.3d at 377 ("[A]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation."). Thus, the court rejects Garrett's Franks argument concerning the iPhone search warrant.

Garrett also argues that law enforcement obtained the iPhone search warrant in reliance on evidence seized pursuant to the residential search warrant, which Garrett argues was illegally

obtained.  See [D.E. 173] 6–7.  As explained, law enforcement did not obtain the residential search

warrant illegally.  Thus, the court rejects this argument.

III.

In sum, the court DENIES defendant's motion to suppress [D.E. 173].

SO ORDERED.  This 12 day of November, 2025.

JAMES C. DEVER III
United States District Judge